Case number 14-5156. Ahmed B. Nurriddin, Appellant v. Charles F. Bolden, Administrator, National Aeronautics and Space Administration. Mr. Roger Chewsky for the Appellant, Mr. Lawrence for the Appellee. Thank you, Your Honor. May it please the Court. Joshua Roger Chewsky for Ahmad Nurriddin, who urges the Court to reverse the judgments of the District Court dismissing his claims. I'm endeavoring to reserve two of my ten minutes for rebuttal. Although Mr. Nurriddin's claims sound in employment discrimination law, the principal issue on his appeal is whether the District Court overstepped the bounds in the summary judgment process. Because Mr. Nurriddin provided more than sufficient evidence for a reasonable jury to find for him on his Title VII claims, summary judgment on liability was unavailable in this case. As this Court has done in similar cases, it should reverse. The fulcrum of the evidence supporting Mr. Nurriddin's claims is a September 18, 2001, email. This is Joint Appendix, page 308. It's an email that is among high-level HR officials at NASA, the HR director and his supervisor. And in that email, which is about what NASA refers to pejoratively, Mr. Nurriddin, as their favorite subject, it discusses a plot that NASA was beginning to devise. Legal counsel asked if CP, that's headquarters HR division, could find him a job and make an offer to close off the OWCP claim, expecting he won't take it and therefore lose his case at OWCP. The offer of a job is a tactical ploy to chip away at all his complaints. This email is striking for three reasons. First, it's direct evidence of NASA's retaliatory animus against Mr. Nurriddin. It describes attempts by NASA to erode Mr. Nurriddin's OWCP, his disability benefits. And it connects that plan with his EO complaints. It's designed to chip away at his complaints. That's precisely the type of conduct that Title VII is designed to curb. Second, notwithstanding this, the district court has nary a reference to this piece of evidence in its 2004 summary judgment opinion. That silence is inexplicable. And the third is that the email goes on, or the email string in the email itself goes on to describe other things that NASA was considering, including whether to place Mr. Nurriddin at another division within NASA. And in that email, NASA says that it doesn't want to place Mr. Nurriddin in another division because, quote, it doesn't want to force another problem down another division's throat. Now, that type of evidence is very similar to the type of evidence that resulted in the reversal of the summary judgment in Pardo-Croneman v. Donovan. In that case, the evidence in play would describe the employee as a problem and also describe not wanting to put that employee in another division because it didn't want to shift that problem to another part of it. Importantly, the tactical ploy is the fulcrum, but you have to look at also what came before. And I think as we've tried to describe it in our brief, really the sequence of events from 1998 through Mr. Nurriddin's termination in 2004 is an interconnected sequence of events in which Mr. Nurriddin is complaining about what's happening to him at NASA, and NASA is then retaliating against him in the form of various things, whether it's— The email went to which one of his claims? The email goes ultimately to his termination claim, Your Honor, but it also reads back into the prior conduct. And if I can, I'd like to try to explain that. Mr. Nurriddin was out of the office at that point on medical leave. He was on medical leave because in his doctor's opinion, an opinion that the senior medical director of NASA accepted in June 2000, that the stress and anxiety caused by the conditions under which he was laboring at NASA required him to be out of work. The tactical ploy is a part of NASA's trying to come to terms with what to do with Mr. Nurriddin. They had an obligation, we contend, to return him— This is because of his being on medical leave? That's correct, Your Honor. And so that goes to the rehabilitation, failure to accommodate claim, plus the rehabilitation retaliation claim? It does go to those two. Those claims were dismissed by the district court on Rule 12b-6. There's no argument in the brief dealing with the retaliation under the Rehabilitation Act? That is—I think there is. I think we have a footnote that addresses that, but because those claims were dismissed on the pleadings, the principal focus of the appeal has been on the Title VII claims. Although they are distinct avenues, they're avenues to the same relief, and that is trying to hold NASA accountable for improper retaliation against Mr. Nurriddin, whether it's because of his alleged disability or whether it's because of his EEO activity. It's just a question of whether you're going down the Rehab Act Avenue or the Title VII Act Avenue. Or maybe it's because he's a pain in the neck. That's certainly NASA's position, Your Honor, and NASA is more than entitled to present that at trial. The question before the district court in 2014 was whether Rule 56 allowed the district court to say that as a matter of law, NASA could not be held liable under Title VII. And as this Court has made clear in cases such as Oka v. Washington Hospital Center, George v. Levitt, Wilson v. Cox, what a plaintiff has to show at the summary judgment stage is that there is enough evidence from which a reasonable jury could find him. Frankly, the fact that the district court looked at much of this same evidence and came to that conclusion in 2009 we think demonstrates strongly that the Rule 56 standard What were the material facts in dispute under your view? Well, there are several. There is the dispute about whether Mr. Nurriddin was a good employee or not. We have NASA's employment records and their reviews that are negative. And at the same time, you have his reviews from the National Science Foundation in 1999 that are positive. In George v. Levitt, that type of factual dispute allowed the reversal of summary judgment. You have a dispute of fact about whether NASA's conduct was pretextual. NASA says that it terminated Mr. Nurriddin because of his medical inability to do his job. However, when you look at that stated basis, it is in conflict with the medical opinions of Mr. Nurriddin's doctors. And there's even a dispute of fact about what the valid medical opinion is of Mr. Nurriddin. You've got several medical opinions that say that he couldn't go back to NASA at all. But you have an overwhelming amount of medical evidence that suggests that he could go back to NASA under the right set of circumstances. So those are examples of the types of disputes that a jury, if they were resolved in Mr. Nurriddin's favor, could allow a reasonable jury to find for Mr. Nurriddin's Title VII claims. I'm not standing here today saying that Mr. Nurriddin should have obtained summary judgment on liability. We didn't move for summary judgment on liability. There's evidence on both sides in this case. But that is precisely the type of situation in which the jury is called upon to resolve those types of factual disputes. Now, I mean, to be frank, because of the district court's failure to properly credit Mr. Nurriddin's pro se allegations of the Rehab Act claim, we think those claims should be reinstated. We think that's a relatively easy decision. The harder question is the summary judgment on Title VII. We think that there was more than enough evidence to support a jury verdict in Mr. Nurriddin's favor. And as a result, those claims should be reinstated and set for trial. Please reverse. May it please the Court. Craig Lawrence is the United States Attorney for Appley-Bolden. Ms. McBarnett is no longer with our office. I am, therefore, making the argument. I think, based on Appellant's argument, there are two things I should point out at the outset. And one is, on the Rehabilitation Act claim, it is clear from this Court's decision in Dumfries that the Second Amendment complaint fails to plead adequately a claim that he was excluded from a broad range of jobs and, therefore, should have been determined to be handicapped and protected. Indeed, the Second Amendment complaint reflects that he was not excluded from a broad range of jobs by his disability because he claimed, in part, that he sought a comparable position. If you look at page 53 of the Joint Appendix, and I think it's paragraph 167, he sought a comparable position. But it seems that what the District Court did was, once it found that it didn't believe that there was a Rehab Act claim, it just, without any real discussion, just dismissed the retaliation claim based on the Rehab Act. Well, then, if he doesn't adequately show that he suffered a disability and was excluded from a broad range of jobs, there's no place to go with the Rehabilitation Act. So if the employer says, this guy complained that he's not being accommodated because of his disability, and that's a completely bogus claim, and I'm going to fire him because I don't like people making bogus claims against me, and that's what's in the record, then there's no retaliation claim? Not on the basis of the Rehabilitation Act. The claim he, I mean, the Court properly looked at it and analyzed it in accordance with Duncan's case and concluded that it fails to state a claim. And his claim that he doesn't have a specific claim that he was terminated on bogus grounds. Basically, the termination claim is a Title VII claim that he makes. But doesn't he allege that under his retaliation for the Rehabilitation Act that all of these things were done, not just the termination, but that these other adverse actions were done to retaliate against him? No, the only claim that he makes under his Rehabilitation Act claim is a wrongful termination. All of the other claims that he makes, if you take a look at... Well, he never, the brief, as I mentioned, doesn't even make an argument that there was retaliation under the Rehabilitation Act. That's correct, Your Honor. I mean, his claim... He made the claim, it's not even clear his complaint makes that claim, because what he alleges under the Rehabilitation Act supposedly is retaliation is exactly what he alleges under the Rehabilitation Act without the retaliation. That's correct. And the district court correctly resolved that based on this court's decisions, the Supreme Court's decision in Sutton against United Airlines, based on the pleadings. And it was correctly resolved. And if you turn to his wrongful termination claim, that's basically a Title VII claim. And if you take a look at 379 and 380 of the Joint Appendix, it basically explains why he was terminated and explains it. And if you look also at page 417 of the Joint Appendix, the Egbert Declaration reflects that it was the accepted practice to terminate an employee who had been on extended workers' compensation and had no definite date and no expectation of when that person was going to be able to return to work. So it was not that there's... What the record reflects is that the agency followed accepted practices and that the termination was based on the extended leave. One thing I'm not clear about is if someone is on a workman's comp and gets terminated, does that change the amount of money they receive monthly? He was receiving, I read someplace, basically for four years, three-quarters of his... Yes, it was less than full pay. And if he is then terminated, the short answer, Judge Randolph, is I'm not sure how that affects his workers' compensation, but at some point... It affects the agency because then it opens a slot up. Yes. I mean, that's what the agency said it was looking for. It had been a substantial period of time. That slot had not been filled, and that's reflected in the termination notice, I believe, and in the explanation on page 417 of the Joint Appendix. And under the circumstances, the district court carefully went through the allegations and made an appropriate judgment. I pointed out that the plaintiff did not dispute the lengthy absence from work. He did not complain in the termination that any comparators had been treated differently, although he claimed that he was seeking... But the email that your colleague started out talking about, which you don't say much about in your brief and which the district court didn't say much about in its opinion, was that we're not really going to do a real job search to try to find him something that will be a good match for him in 2001 because we want to get rid of him. And then when nothing is found for him and he's on workers' comp and he stays on workers' comp, then that's used as the reason to terminate him. Well, there's no indication that that email chain had anything to do with the workers' comp area and the extended leave. And we would just note that on the extended leave, the record reflects that he got all the donated leaves, over some 700 hours' worth of donated leave that had been contributed. But there's no connection between that email and the workers' comp period and the ultimate determination, and the record does reflect that that's appropriate. Why is it there when the termination letter refers to the 2001 actions? The letter itself says, in considering this, we look back to in 2001, he couldn't be accommodated. Well, in 2001, he was off on medical leave for a substantial period of time, and it was after that substantial period that he went on workers' comp. And he had not been performing his position for that period of time, and there's no connection. I mean, I think the district court pointed out at one point that one of the emails at issue was over eight months prior to the ultimate determination and termination, the notice of termination, and didn't connect the dots between the email and the termination. And on this record, the district court correctly resolved what was before it, noting in many instances that there had not been a proffer of evidence to raise a factual dispute. But on the termination, we have the termination notice, we have the fact that it was the regular practice for agencies to make that determination, and under those circumstances. So explain this to me. You say that the policy is if you're out on workers' comp for more than a year, then the policy is to terminate you, right? Well, I don't know that there's a specific period, but a lengthy period of time. And what it's connected with, and there's no indication of a date on which you'll be able to return. And here you have lengthy leave, lengthy workers' comp, and coupled with no indication, no representation from either the plaintiff or his doctors about when he would be able to return to work. And it was at that point that the notice of termination was sent, and at that point that was the regular governmental practice under similar circumstances, and there are no facts to contradict that declaration and the standard practice. And in the judgment of the district court, and we believe it was correct, the Rehabilitation Act claims were properly dismissed, and the termination and other Title VII claims failed based on the record, and judgment was properly entered for NASA based on the lack of disputed facts that would warrant a trial, and we urge that the judgment of the district court. What about the Title VII retaliation claim? Well, the major portion there was a failure of a comparator. I mean, his only comparator that he submitted was Gary Gans, who was working in a different division. If you take a look at the work plans, the responsibilities of each, Gary Gans is at Joint Appendix 191 to 196, and plaintiffs is at 198 to 201. Gary Gans was a management and information specialist. He did agency-wide administration on the agency computer information system. No similar supervisors. Plaintiff was an education specialist in the education division responsible for agency graduate fellowship programs, and he developed plans for evaluating university-level fellowship programs. No similarity, no real comparison at all. And under those circumstances, the district court correctly determined that that was not a But you didn't need comparators for some of these claims. Things like whether he was given, properly denied, a performance. I'm sorry, I guess an award for his performance. Like the year that he, I guess it was 1999, the year that he spent mostly on detail. Well, the explanation was that he had not been in the office to be evaluated, that he had been out on sick leave or other leave for a substantial period and came back and immediately went to National Science Foundation. Here's a problem that I had when I was reading the government's brief in this case, was that the government's brief seemed to repeatedly not address or even mention evidence that was beneficial to the plaintiff. I mean, I know that the government likes their evidence more than the other side's evidence. Everybody likes their evidence more than the other side's evidence. But it just seemed like there were a number of instances where just contrary evidence wasn't discussed at all. And one of them, one example that was pretty glaring, was about this whole issue of that 1999 period. And the citation that the government made in its brief was that, well, there was no, the other agency has to fund the award. Yes. And it cited to a letter that didn't say anything at all about whether the other agency funded it or not. And, you know, there are just other examples. The whole thing of him being placed on a wall and there basically being an acknowledgment that that was improper, but we'll just let it stand. There were lots of things like that that were harmful pieces of evidence that your brief just doesn't talk about. I just found that unhelpful. Well, I apologize for that, Your Honor. But I will note that, as the district court pointed out, on the designation of AWOL, the plaintiff proffered no evidence that raised an inference of discrimination, and the ultimately determination was based in part on the fact that Well, there was no evidence. He proffered no evidence that was retaliation, only a general claim that it was discriminatory and retaliatory animus. And ultimately, the agency, I think, proffered that 5 CFR Section 630.1208I made that an appropriate determination and that he had been, by September 2000, the district court observed that he'd been out for several months on sick leave and failed to provide the appropriate medical documentation, and the regulation required advanced sick leave to be approved. But hadn't documentation been provided in June that NASA said was acceptable, but right hand didn't know what the left hand was doing? There was a miscommunication. Well, to a limited extent, but in the circumstances, I think the district court correctly resolved what was based on the record and certainly appropriately explained it. Resolved the factual dispute? The AWOL determination was not either discriminatory or retaliatory based on the record before it and based on the CFR. And under the circumstances, NASA followed the headquarters time and attendance leave reporting guide. Now that was not in the joint appendix, but it's Exhibit C to, I think it's at 199, ECF-199 in the, no, it's not. I'm not sure where that is, but I know that it was Exhibit C to, let me see if I've got it here. Exhibit C to ECF-217 in the reply to the opposition to motion of summary judgment, and that reflected that the NASA guide had been followed here. And we just, under the circumstances, in view of the district court's opinion and explanation and based on this record, we submit that the district court correctly resolved both the Rehabilitation Act piece and dismissed it and the termination and the other Title VII parts, adequately explaining them based on the record before it at the time. Can I just make sure I understand what the government's position is with respect to retaliation? If an employee makes an EEO claim, let's say, of racial discrimination, and the agency, the responsible people at the agency who are mentioned believe that that claim is unfounded, and let's just suppose for the sake of argument that it is unfounded, that the employee thinks that they did this bad thing to him because of his race, but they weren't really considering that. They were considering something else when they made that action. But nonetheless, so it was an unfounded EEO complaint, but the supervisor nonetheless decides that because he doesn't like the fact that this complaint has been made, he's going to take adverse action against the employee. Is it the government's position that if that's what's pled or that's what there's evidence to support at summary judgment, that you would still grant summary judgment on the retaliation claim because the underlying EEO complaint was unfounded? No, no. In your hypothetical, if so long as the retaliatory animus is demonstrated and shown to be proximate to the adverse action that's at issue, that would state a retaliatory action that would be, so long as it's disputed, that would be actionable and triable by a jury. But the failure here was on the record, and the failure to connect any in the retaliatory animus claims were rather vague and were not connected to the specific events that were pleaded in the complaint. And based on the record, the district court correctly made the determination without that kind of connection. So email saying that this guy's a problem employee, we don't really want to, you know, find him a job somewhere else in the agency because we'll just be giving somebody else's problem, that couldn't even taken in the light most favorable to Mr. Neurid and be seen as retaliatory? It would be properly discounted if there is no connection by proximity to the action that is challenged. Your brief says that he was a serial filer of EEO complaints, that he filed them all the time, so there's certainly proximity in time. Well, but there's no, on the record before the district court, there was no connection for any of the specific claims that were challenged by the plaintiff. And the district court, that was the problem that the district court had, and the reason the district court resolved it the way it did was the lack of proximity to, not on all of them, but on a number of them, simply there was no connection to the action and the statement, if there was one or whatever, of discriminatory, allegedly discriminatory animus. And it was that proximity, lack of it, and the connection, a lack of pleading the connection that animated the district court's decision. And we think quite correctly based on the record before it, and we would urge for that reason that the judgment of the district court be affirmed. Thank you. Thank you. The record contains more than adequate circumstantial evidence for the Title VII claims to go to trial. We know what Malcolm Phelps thought about Mr. Niren's EEO activity. In a performance review, he called it a pile of bull and a crock of shit. That's Mr. Niren's supervisor, and that's his commentary on the EEO activity. Dr. Phelps was involved from 1998 through the tactical ploy discussion in 2001. If you look at JA309. Did the agency defend the EEOC claims? I believe so. Before the EEOC? I believe so. And the EEOC ruled in favor of the agency? Actually, standing here, I don't know the answer to that, Your Honor. I suppose they did. I don't think that impacts the retaliation analysis. Well, doesn't it put in a different light the comment, although very colorful, that if they had said in the oral statement that these claims are frivolous, that's another way of saying it. And the EEOC agreed and said it NASA? So what's the significance of that? I think it remains a triable issue. It's up for the jury to decide what Dr. Phelps meant by that comment. I think when you take Dr. Phelps' comment and you extend it through the adverse actions taken against Mr. Nernan in 1998, 1999, 2000, his rejection of the medical evidence, not just Dr. Conway's agreement with Mr. Nernan's doctors, but medical evidence provided later in June, in July, and in September. And notwithstanding that, he says, you know what? We're putting him on a wall. It doesn't matter. It would be very easy for a jury to infer that Dr. Phelps retained the animus that was expressed in the 1998 performance review. And Dr. Phelps is involved in the discussions about the tactical ploy. Another individual who was involved in those discussions is Mark Batkin, and I see my time has expired. But if you look at the record, the record shows that Mr. Batkin was one of the individuals who recommended Mr. Nernan's termination. There is enough circumstantial evidence, and there's direct evidence of animus in this case. This is not a case that should be resolved in summary judgment. This is a jury issue. It should go to trial. Please reverse. Thank you. The case will be submitted.
judges: Brown, Wilkins, Randolph